UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

YUSUF ABDUR-RAHEEM MUSAFIR,

     Petitioner,       Case No. 2:23-cv-192

v.               Honorable Jane M. Beckering

SARAH SCHROEDER,

     Respondent.

_____/

**OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Yusuf Abdur-Raheem Musafir is incarcerated with the Michigan Department of Corrections at the Central Michigan Correctional Facility (STF) in St. Louis, Gratiot County, Michigan. On August 25, 2020, Petitioner pleaded *nolo contendere* in the Macomb County Circuit Court to one count of delivery/manufacture of ecstasy, in violation of Michigan Compiled Laws § 333.7401(2)(b)(i). On October 22, 2020, the trial court sentenced Petitioner to 3 years of probation and time served of 53 days.

Petitioner subsequently violated his probation. At a probation violation hearing held on January 27, 2022, the trial court found Petitioner guilty of violating his probation. On February 11, 2022, the trial court sentenced Petitioner to 5 to 20 years' incarceration, with credit for 68 days of time served.

On October 2, 2023, Petitioner filed his habeas corpus petition raising the following ground for relief:

  I.  Violation of Due Process rights: Ineffective Assistance of Counsel

(Pet., ECF No. 1, PageID.5.) Respondent contends that Petitioner's ground for relief is vague and conclusory and should be deemed abandoned and that, notwithstanding the conclusory nature of his ground for relief, it is meritless. (ECF No. 8.) For the following reasons, the Court concludes that Petitioner has failed to set forth a meritorious federal ground for habeas relief and will, therefore, deny his petition for writ of habeas corpus.

## Discussion

### I.      Factual Allegations

On August 25, 2020, Petitioner pleaded guilty in the Macomb County Circuit Court to one count of delivery/manufacture of ecstasy, in violation of Michigan Compiled Laws § 333.7401(2)(b)(i).[1] (ECF No. 9-2, PageID.125.) On October 22, 2020, the trial court sentenced Petitioner to three years of probation and 53 days of time served. (ECF No. 9-3, PageID.160.)

On December 1, 2020, the trial court issued a probation violation warrant for Petitioner's arrest. (ECF No. 9-1, PageID.117.) The trial court held a hearing with respect to the probation violation on March 2, 2021. (ECF No. 9-6.) At that time, Petitioner, through counsel, maintained a not guilty plea and noted that the underlying violation was premised upon "a new case out of Detroit for a potential assault" that had been dismissed and was no longer pending. (*Id.*, PageID.180.) Ultimately, the trial court granted the motion to dismiss made by Petitioner's counsel and continued Petitioner on probation. (*Id.*, PageID.190.)

On September 10, 2021, the trial court issued another probation violation warrant for Petitioner's arrest. (ECF No. 9-1, PageID.114.) The court scheduled a hearing for September 21, 2021, but Petitioner failed to appear. (ECF No. 9-7.) The court issued a bench warrant for

---

[1] Petitioner also pleaded guilty to one count of operating a vehicle while his driver's license was suspended, revoked, or denied. (ECF No. 9-2, PageID.126.) He was sentenced to 93 days, with credit for time served, and a six-month suspension of his license.

2

Petitioner's arrest and set bond at $50,000.00. (*Id.*, PageID.194.) The register of actions reflects that Petitioner was arrested that same day and appeared for his probation violation arraignment via Zoom from the Macomb County Jail. (ECF No. 9-1, PageID.114.)

The trial court started to conduct Petitioner's probation violation hearing on December 22, 2021. (ECF No. 9-9.) Counsel for Petitioner requested that the hearing be continued to allow her more time to speak to Petitioner about the matter. (*Id.*, PageID.208.) The trial court granted that request.

The trial court continued the probation violation hearing on January 27, 2022. (ECF No. 9-10.) At that time, a probation officer, Andrea Rupright, testified. (*Id.*, PageID.218.) Ms. Rupright testified that on September 10, 2021, Petitioner was charged with three violations of probation. (*Id.*, PageID.219.) The first violation stemmed from September 9, 2021, when Petitioner had been arrested for domestic violence and assault by Detroit police officers. (*Id.*, PageID.219–220.) Petitioner did not report that arrest to the probation department, as required by his probation conditions. (*Id.*, PageID.220.) The second violation stemmed from Petitioner's arrest for domestic violence by the Clinton Township Police Department on April 16, 2021. (*Id.*, PageID.220–221.) Those charges were ultimately dismissed. (*Id.*, PageID.221.) Petitioner did not report that arrest to the probation department as required. (*Id.*) Finally, on January 13, 2020, Petitioner was ticketed by the Detroit police for having expired plates and no proof of insurance. (*Id.*) Petitioner did not report that contact with police to the probation department as required by his conditions. (*Id.*, PageID.221–222.)

Petitioner did not present any witnesses in his defense. Instead, Petitioner, through counsel, "denie[d] this assaultive behavior" and noted that the probation violations were based upon hearsay because the victims had not testified. (*Id.*, PageID.231.) The trial court found Petitioner guilty of

violating his probation. (*Id.*, PageID.231.) Petitioner appeared before the trial court for his probation violation sentencing on February 11, 2022. (ECF No. 9-11.) As noted above, the court sentenced Petitioner to 5 to 20 years' incarceration, with credit for 68 days of time served. (*Id.*, PageID.270, 272.)

Petitioner, through counsel, filed an application for leave to appeal to the Michigan Court of Appeals, asserting that Petitioner's due process rights were violated "when the sentence agreement, as reasonably interpreted, was violated," and arguing that Petitioner should "be granted specific performance of the agreement." (ECF No. 9-12, PageID.276.) In his application, Petitioner asserted that as part of his plea agreement, he was promised "that the guidelines would be scored using the D grid instead of the applicable B grid," resulting in a guidelines sentence of 0-17 months. (*Id.*, PageID.281.) Despite that agreement, Petitioner was sentenced to 5 to 20 years of incarceration after he violated his probation. (*Id.*) As part of his argument, Petitioner asserted that counsel was ineffective for failing to insist upon specific performance of the plea agreement. (*Id.*, PageID.286.) The court of appeals denied Petitioner's application for leave to appeal for lack of merit in the grounds presented in an order entered on August 17, 2022. (*Id.*, PageID.274.) The Michigan Supreme Court denied Petitioner's *pro per* application for leave to appeal on January 4, 2023. (ECF No. 9-13, PageID.469.) This § 2254 petition followed.

## II.    AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575

U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity.

*Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching

outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

"[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in

their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal

quotation marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160

F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is

presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and

convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011)

(en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d

652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate

courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v.*

*Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court

is not free to consider any possible factual source. The reviewing court "is limited to the record

that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563

U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was

required under clearly established federal law or that the state court's factual determination was

unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the

underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576

U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's

claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example,

if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d

at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d

433, 436 (6th Cir. 2003)).

### III.     Discussion

As set forth *supra*, Petitioner's sole ground for relief states as follows: "Violation of Due

Process Rights: Ineffective Assistance of Counsel." (Pet., ECF No. 1, PageID.5.) Petitioner sets

forth no facts supporting this ground; instead, he lists several cases in support of his claim, despite

this Court's form petition specifically stating: "Do not argue or cite law. Just state the specific facts

that support your claim." (*Id.*)

Respondent first contends that Petitioner's ground for relief is "vague, conclusory, and

abandoned." (ECF No. 8, PageID.83.) Indeed, the Rules Governing § 2254 Proceedings provide

that a § 2254 petition must "specify all the grounds for relief available to the petitioner" and "state

the facts supporting each ground." *See* Rule 2(c)(2), Rules Governing § 2254 Proceedings; *see*

*also Mayle v. Felix*, 545 U.S. 644, 655 (2005) ("Notice pleading is not sufficient, for the petition

is expected to state facts that point to a real possibility of constitutional error."). The Supreme

Court has held that a federal court is "authorized to dismiss summarily any habeas petition that

appears legally insufficient on its face." *McFarland v. Scott*, 512 U.S. 849, 856 (1994).

Respondent is correct that Petitioner's ground for relief, as stated in the Court's form

petition, is vague and conclusory. Petitioner, however, attached to his § 2254 petition a copy of his

application for leave to appeal to the Michigan Court of Appeals. As noted above, in that

application, Petitioner asserted the following claim: "[Petitioner's] rights to due process were violated when the sentence agreement, as reasonably interpreted, was violated and [Petitioner] should be granted specific performance of the agreement." (ECF No. 1-1, PageID.19.) Within that argument, Petitioner argued that counsel was ineffective for not seeking specific performance of the agreement. The Court, therefore, construes Petitioner's § 2254 petition to adopt as his ground for relief the argument set forth in his application for leave to appeal.

### A.    Applicable Standards

#### 1.    Due Process and Plea Agreements

Petitioner faults the trial court for violating his due process rights by not abiding by the plea agreement underlying his criminal proceeding, part of which called for Petitioner to be sentenced within guidelines calling for 0-17 months of incarceration.

A criminal defendant has a due process right to ensure that the terms of his plea agreement are enforced. *See Santobello v. New York*, 404 U.S. 257, 261–62 (1971). Therefore, "when a promise on which a plea rests is not fulfilled, state courts are permitted to determine the remedy." *Haight v. Jordan*, 59 F.4th 817, 856 (6th Cir. 2023) (citing *Santobello*, 404 U.S. at 263). Notably, however, "states are not constitutionally required to provide specific enforcement of a plea agreement; they can instead remedy a plea agreement violation by allowing the defendant to withdraw the guilty plea." *See id.* (citing *Santobello*, 404 U.S. at 262–63; *Mabry v. Johnson*, 467 U.S. 504, 511 n.11 (1984)). Indeed, the United States Supreme Court has noted that when a plea agreement is breached, "no decision from this Court clearly establishes that" the state court is required "to impose the lower sentence that the parties originally expected." *Kernan v. Cuero*, 583 U.S. 1, 3 (2017).

### 2.    Ineffective Assistance of Counsel

As noted above, Petitioner also contends that counsel was ineffective for failing to request specific performance of the plea agreement—namely, that Petitioner be sentenced within the 0-17 months range provided by the guidelines. (ECF No. 1-1, PageID.29.)

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the petitioner resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the petitioner is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen*, 563 U.S. at 190; *Premo v. Moore*, 562 U.S. 115, 122 (2011). Scrutiny of counsel's performance is "highly deferential", per

*Strickland*, to avoid the temptation to second guess a strategy after-the-fact and to "eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. And then scrutiny of the state court's scrutiny of counsel's performance must also be deferential, per 28 U.S.C. § 2254(d). In light of that double deference, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . ." (citing *Harrington*, 562 U.S. at 102)).

### B.    Analysis

Petitioner raised his ground for relief in his application for leave to appeal to the Michigan Court of Appeals, and that court rejected his claim in a summary order for lack of merit. (ECF No. 9-12, PageID.274.) That order is entitled to AEDPA deference by this Court. *See Werth v. Bell*, 692 F.3d 486, 493 (6th Cir. 2012) (applying AEDPA deference to a Michigan Court of Appeals order stating only that leave to appeal was denied "for lack of merit in the grounds presented" (citing *Harrington*, 562 U.S. at 99–100)); *see also Smith v. Cook*, 956 F.3d 377, 386 (6th Cir. 2020) (noting that the *Harrington* presumption of a merits adjudication "prevails even when the state court's opinion wholly omits discussion of the federal claim"). For the reasons discussed below, Petitioner fails to demonstrate that the state courts' rejection of his ground for relief is contrary to, or an unreasonable application of, clearly established federal law.

At Petitioner's plea hearing, the parties represented that they had agreed that the D grid, not the B grid, of the Michigan sentencing guidelines would apply to Petitioner's sentencing. (ECF No. 9-2, PageID.126.) In exchange for Petitioner's plea, the State was dismissing the habitual offender enhancement and entering into the sentence agreement. (*Id.*) Essentially, Petitioner was "pleading to a B grid, but [the parties were] agreeing to D, as in David, grid guidelines." (*Id.*,

PageID.127.) The trial court stated that such an agreement was "perfectly permissible, very

creative and appropriate." (*Id.*)

Petitioner's counsel then asked for a *Cobbs*[2] evaluation from the trial court. (*Id.*,

PageID.127–128.) The court stated:

> On a case like this where the lower end of the guidelines dips below twelve months,
> I am willing to say that my sentence would be no more than three years probation
> with up to 356 [sic] days in the County Jail. So he would not be going to prison. He
> would not have the upper end of the statutory maximum to look at. He would know
> that he would be getting out within one year with good time. But I am not willing
> to go to a [*Cobbs*] [a]greement which guarantees probation.
>
> Now, when I get the final sentence report could I come up with a sentence that is
> lower than probation with 365 days in jail? Of course I could. I don't know if I
> would. I make no prediction. But as far as a [*Cobbs*] [a]greement, to fully state it,
> if he pleaded, if the gentleman is willing to plead guilty knowing that the sentence
> is likely to be a three-year probationary period with the first 365 days in jail, I'm
> ready to take that plea. If I get the presentence report and decide that more time is
> appropriate then of course he would be free to withdraw his plea. If I decide that
> less time would be appropriate, or exactly what I've said, then the plea could not
> be withdrawn. That's the full understanding that I want to put on the record.

(*Id.*, PageID.128–129.) Based upon that information, Petitioner decided to plead guilty. (*Id.*,

PageID.130.)

At sentencing, the parties reiterated that Petitioner was to be sentenced using the D grid of

the state sentencing guidelines. The presentence report, however, had prepared the recommended

guidelines using the B grid. The trial court noted that using the D grid, Petitioner's minimum

guidelines range called for 0-17 months of incarceration. (ECF No. 9-3, PageID.149.) The trial

court noted that the guidelines in the presentence report needed to be corrected because of the

agreement to sentence Petitioner pursuant to the D grid and because the *Cobbs* agreement set forth

---

[2] In *People v. Cobbs*, the Michigan Supreme Court authorized state trial courts to enter a particular
type of plea under which the judge states the appropriate length of the sentence that would be
imposed if the defendant pleaded guilty, based on the information available at that time to the
judge. *See* 505 N.W.2d at 212.

by the trial court. (*Id.*) The trial court then announced that it would honor the *Cobbs* agreement, "so it will be 365 days in the County Jail, or less, along with probation." (*Id.*)

The trial court went on to sentence Petitioner to three years of probation and 53 days of time served. (*Id.*, PageID.156.) The court then engaged in the following exchange with Petitioner:

> THE COURT: I realize I'm taking a chance and I realize that to some extent this weakens the message about the danger of drugs, that I have a person convicted of dealing Ecstasy. I realize all that. But again rehabilitation of the offender and the protection of society is the main goal. I think if I sent the Defendant back to jail for 365 days with credit for 53, of course he'd be getting out in about six or seven months with good time and the 53 days credit. If I cut it down to 270 the same thing would apply. I think since he's already been behind bars for 53 days he knows how that feels. He knows that he doesn't want to do that again. Putting him in for another month, two months, three months, six months doesn't make that point anymore. If he's going to rehabilitate he's already got that lesson. He's already gotten the benefit of whatever that will teach. Because he's going to be on probation for three years he knows now, and I think it's just a natural understanding of human beings, that when somebody, namely me, gives out great mercy at the time of sentence, if the person violates the terms of probation you have to expect that the countervailing reaction is going to apply. Namely that if I could send you away for 20 years I might send you away for like twelve to 20 years in prison. Because if after all of this if you commit another crime you really don't have any argument left.
>
> Do you understand, Mr. Musafir?
>
> MR. MUSAFIR: I do, Your Honor.

(*Id.*, PageID.156–158.) Near the end of the sentencing hearing, the trial court and Petitioner engaged in the following exchange:

> THE COURT: Now again, if you do violate probation it makes a difference if it's a technical violation or not. But if it's a serious violation you have my promise that prison time is awaiting you in your future. So be wary of that, okay.
>
> MR. MUSAFIR: Yes, Your Honor.

(*Id.*, PageID.162.) Ultimately, as set forth above, Petitioner violated his probation and was sentenced to 5 to 20 years of incarceration.

Petitioner contends that the trial court violated his due process rights at his probation revocation sentencing by allegedly breaching the provision of the plea agreement—namely, the

*Cobbs* agreement—that Petitioner would be sentenced pursuant to a minimum guidelines range of 0-17 months. As an initial matter, while *Santobello* establishes that a due process violation occurs when a prosecutor induces a defendant to plead guilty by making a promise with respect to sentencing recommendations and then fails to fulfill that promise, the Sixth Circuit has noted that *Santobello* does not apply to a breach of a plea agreement by a trial court. *See Brown v. McKee*, 304 F. App'x 254, 257 (6th Cir. 2009).

Nevertheless, even if *Santobello* did apply to alleged breaches of plea agreements by trial courts, the record reflects that no such breach occurred in Petitioner's case. Nothing in the state court record can lead this Court to reasonably conclude that the *Cobbs* agreement for 0-17 months applied to future probation violations and sentencings in Petitioner's case. Likewise, there is nothing in the record supporting Petitioner's assertion that there were any promises made regarding specific guidelines ranges for any probation violations and sentencings. Indeed, as set forth above, the trial court all but assured Petitioner that he would be facing a prison sentence if he violated probation and noted that if Petitioner were facing 20 years' incarceration for a probation violation, the trial court could sentence him to a range of 12 to 20 years. This Court simply cannot grant habeas relief "by crediting . . . [P]etitioner's subjective version of his understanding of the plea bargain." *Maslonka v. Hoffner*, No. 2:13-cv-14110, 2023 WL 2506406, at *4 (E.D. Mich. Mar. 14, 2023) (citing *Nichols v. Perini*, 818 F.2d 554, 558–59 (6th Cir. 1987)). Notably, Petitioner affirmed his understanding that he could face prison if he violated his probation during his change of plea hearing. Thus, in no way did the trial court violate Petitioner's due process rights by sentencing him to 5 to 20 years of incarceration after revoking his probation.

Likewise, Petitioner's attorney did not render ineffective assistance by failing to seek specific performance of the plea agreement. The trial court complied with the *Cobbs* agreement at

Petitioner's initial sentencing after he entered his plea. As discussed above, that agreement did not bind the trial court at any probation revocation proceedings. For counsel to argue otherwise and request specific performance would have been meritless. "[O]mitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013); *see also Mahdi v. Bagley*, 522 F.3d 631, 638 (6th Cir. 2008) ("No prejudice flows from the failure to raise a meritless claim."). Petitioner, therefore, is not entitled to habeas relief with respect to his assertion of ineffective assistance of counsel.

In sum, Petitioner has not demonstrated that the state courts' rejection of his due process and ineffective assistance of counsel claims regarding his probation revocation proceedings and sentence was contrary to, or an unreasonable application of, clearly established federal law. Petitioner, therefore, is not entitled to federal habeas relief.

**IV.     Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude

14

the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Conclusion

The Court will enter a judgment denying the petition, as well as an order denying a certificate of appealability.


Dated:     June 14, 2024                        /s/ Jane M. Beckering
                                                Jane M. Beckering
                                                United States District Judge